[No. 2574. Decided July 8, 1897.]

M. J. BRANDENSTEIN, *Respondent,* v. FRANKLIN T. WAY, *Appellant.*

STATEMENT OF FACTS — INCLUSION OF MATTERS SUBSEQUENT TO APPEAL — GROUNDS FOR ATTACHMENT — COMMISSION OF FELONY — EMBEZZLEMENT.

A supplemental affidavit in aid of attachment should be stricken from the record on appeal, when it was not filed in the lower court until after the appeal had been taken, as Code Proc., § 322, allowing amendments of that character applies only to proceedings during the trial.

Code Proc., § 289, subd. 9, allowing an attachment when the damages for which the action is brought are for injuries arising

from the commission of some felony or for the seduction of some female, warrants the issuance of the writ in civil actions against an agent for embezzlement.

An affidavit in attachment is sufficient to support the writ, under a statute allowing it in cases of felony, where the affidavit alleges that defendant was the agent of plaintiff under a contract by which defendant was intrusted with goods for sale upon a stipulated commission, that title was to remain in plaintiff and the proceeds of sales belong to him, and remittance thereof made at stated intervals; and that defendant converted the moneys so received to his own use and thereby committed the crime of larceny by embezzlement.

The fact that an agent is entitled to a commission upon goods consigned to him for sale the title of which is to remain in the consignor, would not give him a joint title with his consignor in the proceeds of sales to such an extent as to protect him from the operation of the statute making larceny by an agent a felony.

Appeal from Superior Court, King County.—Hon. RICHARD OSBORN, Judge. Affirmed.

*McClure & Bass*, and *J. T. Ronald*, for appellant:

To constitute the crime of embezzlement the elements of a fiduciary relation and the conversion are essential. *United States v. McElroy*, 2 Mont. 494. These pleadings charge no breach of trust—nothing more than a breach of duty. There is not a debt created in any fiduciary capacity. *Chapman v. Forsyth*, 2 How. 202; *Grover & Baker Sewing Machine Co. v. Clinton*, 5 Biss. 324; *Zeperink v. Card*, 11 Fed. 295; *Hennequin v. Clews*, 77 N. Y. 427 (33 Am. Rep. 641); *Palmer v. Hussey*, 87 N. Y. 303; *Stratford v. Jones*, 97 N. Y. 588; *Cronan v. Cotting*, 104 Mass. 245 (6 Am. Rep. 232); *Woodward v. Towne*, 34 Am. Rep. 337; *Green v. Chilton*, 34 Am. Rep. 483; *Woolsey v. Cade*, 25 Am. Rep. 717; *DuPont v. Beck*, 81 Ind. 271; *Curtis v. Waring*, 92 Pa. St. 104; *Scott v. Porter*, 93 Pa. St. 38 (39 Am. Rep. 719); *Kaufman v. Alexander*, 53 Tex. 562; *Chipley v. Frierson*, 18 Fla. 639.

There was no "intrusting" here within the meaning of § 55, Penal Code. The various purchasers surely did not intrust the amounts paid to Way for any purpose. *Shelburn v. Commonwealth*, 3 S. W. 7.

But, conceding that Way was an agent within the meaning of the section, and conceding that this was an intrusting of money to him, there is nevertheless lacking a most essential element of embezzlement, viz.: The money alleged to be converted is not the money of another. Way was entitled to an undivided one-hundredth part thereof, and to deduct it before remitting the balance. The contract provides that the goods consigned shall be the property of Brandenstein *until sold*, but, when sold, the proceeds are the joint property of Brandenstein and Way. *State v. Kent*, 22 Minn. 41 (21 Am. Rep. 764); *Commonwealth v. Stearns*, 2 Metc. (Mass.) 347; *Commonwealth v. Libbey*, 11 Metc. (Mass.) 64 (45 Am. Dec. 185); *Carter v. State*, 53 Ga. 326; *State v. Reddick*, 48 N. W. 846; *Miller v. State*, 20 N. W. 253; *Van Etten v. State*, 40 N. W. 289; *People v. Wadsworth,* 30 N. W. 99.

*George H. Preston (George Donworth,* of counsel), for respondent:

Upon the point that the proceeds of sales were not the joint property of plaintiff and defendant, but that the money collected belonging to plaintiff and defendant was liable for conversion, counsel cited *Clark v. Commonwealth*, 29 S. W. 973; *Campbell v. State*, 35 Ohio St. 75; *Territory v. Meyer*, 24 Pac. 183; *Cole v. Aune*, 41 N. W. 934.

The opinion of the court was delivered by

DUNBAR, J.—Appellant interposes a motion to strike a portion of the statement of facts from the record, which

motion we think must be sustained. An affidavit in attachment was filed in the action and a motion was made by the defendant to dissolve the attachment on various grounds. This motion was also overruled, and thereupon the defendant gave notice of appeal to this court. Subsequently the respondent (plaintiff) filed a supplemental affidavit in aid of the attachment, which was incorporated by the court below as a part of the statement of facts. It is this supplemental affidavit which the appellant moves to strike from the statement.

The respondent, in opposition to this motion, invokes § 322 of the Code of Procedure, which provides that:

" This chapter shall be liberally construed, and the plaintiff, at any time when objection is made thereto, shall be permitted to amend any defect in the complaint, affidavit, bond, writ or other proceeding, and no attachment shall be quashed or dismissed, or the property attached released, if the defect in any of the proceedings has been or can be amended so as to show that a legal cause for the attachment existed at the time it was issued, and the court shall give the plaintiff a reasonable time to perfect such defective proceedings."

It is evident to our mind that this provision in relation to the amendments is intended to apply to amendments during the trial, and not to amendments made or sought to be made after the case has been tried below and an appeal taken to this court. If upon the motion of the defendant to dissolve the attachment the plaintiff had offered to amend his affidavit or to furnish a supplemental affidavit, the statute would have been in point and the court would have been authorized in allowing the amendment. But it is apparent from the record in this case that this court is now called upon to consider upon this appeal a matter which was not before the court at the time it passed upon the motion to discharge the attachment, and it was

from the action of the court in refusing to discharge the attachment, as the case then stood when the court made its order, that the defendant appealed. This court must look upon the record as it then existed and upon the facts then before the court, and not upon the facts which were afterwards presented to it.

This was the view we took of this case when it was presented to this court in the shape of a mandamus to compel the lower court to certify to a proper statement of facts, but the writ in that case was refused because we were of the opinion that the proper practice was to move to strike any portion of the record which was made subsequently to the appeal.

But, outside of the amended or supplemental attachment, we are inclined to think that the original affidavit of attachment upon which the court acted was sufficient. If this attachment can be sustained, it must be sustained under subd. 9 of § 289 of the Code of Procedure, which allows an attachment when the damages for which the action is brought are for injuries arising from the commission of some felony or for the seduction of some female. It is contended by the appellant that the statute has reference to injuries to the person only and not to property, and he insists that, as the seduction of a female is a felony, if the object of the statute had been to confer the right to issue the writ in all cases of commission of felony, the addition of a cause for the seduction of females would be useless and senseless. But we hardly see how the addition of this cause of attachment would exclude injuries to property any more than injuries to persons. In fact, if the doctrine that the expression of one excludes the other were to be applied at all, it would exclude injuries to a person, outside of the injury for the seduction of a female, and leave the statute to apply to injuries

arising from the commission of felonies with relation to property. However that may be, the statute provides in broad terms that the writ shall issue when the damages for which the action is brought are for injuries arising from the commission of some felony, and, considering this unrestricted language, we do not feel that we would be justified in restricting its application to any particular kind of injury.

But it is contended further by the appellant that, conceding the application of this statute to a felony, the affidavit in this instance is not sufficient in that it does not show that any felony has been committed. This action is based upon a contract, which in brief was that the plaintiff and respondent constituted the defendant and appellant his agent for the transaction of certain business, viz., the sale of spices, sugars, etc., and the contract was as follows:

" This agreement made and entered into this eighth day of November, 1895, at the city and county of San Francisco, state of California, by and between the co-partnership firm of M. J. Brandenstein & Co., of said city and county, the party of the first part, and Frank T. Way, of the city of Seattle, state of Washington, the party of the second part;

" Witnesseth: That for and in consideration of the mutual promises and undertakings of the parties hereto, as hereinafter set forth, it is agreed by and between them as follows, to-wit:

I.

" The said party of the first part agrees to and hereby does employ the said party of the second part as its agent to sell for and on behalf of the said party of the first part, such sugars, rice, tapiocas, coffees and spices, as said party of the first part shall consign to the said party of the second part for said purpose of sale, and at such prices, and such prices only, as the said party of the first part shall lay down and determine. The said party of the first part

shall ship said goods to the said party of the second part in such quantities and at such times as the said party of the first part shall itself determine. And the said party of the second part shall store said goods in the name of said party of the first part in such warehouse or warehouses as the said party of the first part shall designate. The said party of the second part may store said goods in his own warehouse, unless otherwise directed by the said party of the first part. Said party of the second part shall have the right to remove said goods from said warehouses as they are sold by him on behalf of the said party of the first part. It is understood that the title and all property rights to said goods so consigned as aforesaid by the said party of the first part to the said party of the second part, shall remain in the said party of the first part until sold by the said party of the second part on behalf of the said party of the first part. And said party of the first part shall pay all charges of storage of said goods while in the warehouses, as stated, and furthermore shall itself insure said goods for its own benefit.

## II.

"Said party of the second part shall make all sales of said goods so consigned as aforesaid, in the name of the said party of the first part, and shall have no right to sell or bill said goods in his own name or in any other name than that of the party of the first part. The said party of the second part shall keep regular books of accounts of all sales so made, which books are to be subject to the inspection of the said party of the first part or its agent, at any and all times. Furthermore, the said party of the second part shall render daily reports to the said party of the first part of all sales of goods so made by him on behalf of the said party of the first part. He shall, too, collect all accounts due on said sales, and shall make remittances at least every three days of all moneys so received by him on behalf of the said party of the first part. It is understood that said accounts, so to be kept by the said party of the second part on behalf of the said party of the first part, shall in no way belong to the said party

of the second part, but shall remain the property of the said party of the first part. And the said party of the second part undertakes only to use all reasonable skill and diligence, and the best faith in the selection of purchasers for said goods, and shall not be held to guarantee the validity of said accounts at all events.

### III.

"And in consideration of the services so to be rendered by the said party of the second part in the sale of said goods as aforesaid, the said party of the second part shall receive as compensation therefor, a commission of one per cent. (1 per cent.) on all sales of said goods actually effected by him on behalf of the said party of the first part, which said commission he shall deduct from the remittances to be made by him on sales as hereinabove provided.

### IV.

"And it is further agreed by and between the parties hereto, that the above provisions shall apply to the commodity of matting to be consigned to the said party of the second part by the said party of the first part, for the like purpose of sale, excepting and providing, however, as follows, to-wit: The said party of the second part may sell said matting at such figures as he shall himself determine; he shall remit to the said party of the first part the prices at which said matting shall have been laid down and billed to him by the said party of the first part upon any sale by him of said commodity to any purchaser, whether he shall have received payment on any such sale or not; providing, however, that as above provided, said remittance need not be made oftener than every three days. As soon as the said party of the second part shall have made a full remittance on any account as aforesaid, said account on which said remittance shall have been made shall become the property of the said party of the second part. Furthermore, the said party of the second part shall be entitled to no other compensation for his services in the sale of said matting, except the difference between the prices at which said com-

modity shall have been laid down to him by the said party of the first part, and the prices at which the said party of the second part shall have sold it.

## V.

" It is understood that the said party of the second part shall have no right or authority whatever to sign any instrument on behalf of the said party of the first part in any way binding or affecting the said party of the first part, excepting, however, that the said party of the second part shall have the authority to sign receipts for all moneys received by him for and on behalf of the said party of the first part in the course of his said employment, and excepting, too, that he shall have the authority to sign orders for the removal of goods so consigned as aforesaid, from the warehouses in which they are stored, for the purpose of sales actually effected on behalf of the said party of the first part as aforesaid.

## VI.

" This agreement shall continue only during the pleasure of the parties thereto, and shall be terminable forthwith at the instance of either upon notice to the other.

" In witness whereof, we have hereunto set our hands this eighth day of November, 1895.

" M. J. BRANDENSTEIN & Co.,<br>" By I. MARX, attorney in fact.<br>" FRANK T. WAY."

The contract is referred to in, and made a part of, the affidavit which alleges the agency; alleges that goods were furnished in accordance with the. terms of the contract; that the defendant sold the goods and received the proceeds of sales in money to the extent of several thousand dollars mentioned; that he withheld and converted the same to his own use. The concluding portion of the affidavit, which is too lengthy to set out in detail, is as follows:

" That the damages for which said action is brought

are for injuries arising from the commission of a felony, to-wit, the crime of larceny by embezzlement, committed by said defendant in King county, state of Washington, as follows: That the said defendant being then and there the agent of the said plaintiff, to whom the money and property aforesaid of said plaintiff was intrusted, did on to-wit, the 14th day of November, 1896, fraudulently convert the same to his, the said defendant's own use, and has wholly failed to account therefor to said plaintiff, being the person so intrusting the same to him the said defendant. And the said defendant has been guilty of a fraud as aforesaid in incurring the obligation aforesaid, for which said action is brought. . . ."

These allegations of the affidavit are made after a recital of the acts which it is alleged constitute the crime of embezzlement. It is claimed by the appellant that the affidavit simply shows a violation of a contract and nothing more, and that inasmuch as the defendant was entitled to a commission of one per cent. for selling, the title to the property was a joint title and therefore the condition of the statute was not met; and the property must be the property of another. It is also insisted that the property was not the property of the parties to whom the defendant sold these goods after they paid money to the defendant, because he was authorized under his contract with the plaintiff to sell the same and receive payment for the same; and some cases are cited, under the statutes which are somewhat similar to but not exactly like ours, in support of such holding.

But we think that such a contention is a narrow one. It might be well to see exactly the provisions of the statutes in this respect. Sec. 55 of the Penal Code is as follows:

" If any agent, clerk, officer, servant, or person, to whom any money or other property shall be intrusted, with or without hire, shall fraudulently convert to his own use, or

shall take and secrete the same with intent fraudulently
to convert the same to his own use, or shall fail to account
to the person so intrusting it to him, he shall be deemed
guilty of larceny," etc.

Under the conditions of this agreement and the allega-
tions of the affidavit, the defendant was intrusted with
property, and under the allegations of the affidavit he con-
verted the property to his own use, and failed to account
for the same to the person intrusting it to him; for it was
especially provided in the agreement that the money which
he received for the sales of the goods was to be the money
of the plaintiff and not the money of the defendant. It
is true that the property appropriated was not the property
of the parties to whom the defendant sold the goods, and
a large portion of the appellant's argument is directed to
that question; but it was the property of the plaintiff in
this action and falls as squarely within the statute as
though it were the property of the parties purchasing. If
A says to B: "Take my horse and sell it in the market
for $100, return the money to me within twelve hours
after the sale is made, and I will allow you one per cent.
for your services," and B sells the horse, receives $100,
appropriates the same to his own use and refuses to account
to A for the same, it seems to us that the crime of larceny
is made out under the statute above referred to; and that
is no plainer case than the one at bar. The property was
intrusted to the defendant under his agreement with the
plaintiff, to sell for plaintiff's use. It was stipulated that
the title to the property should remain in the plaintiff,
that the proceeds of the sale should be the property of
the plaintiff, and that defendant was to return the same
to plaintiff within three days; and to hold that because
the defendant had a right to a commission of one dollar on
every hundred obtained, the title to every dollar obtained
was such a joint title as would protect the wrongdoer from

the operations of this statute would be to defeat the intention of the law and to permit criminals to go unwhipped of justice.

We think the original affidavit was sufficient to warrant the issuance of the writ of attachment, and the judgment will be affirmed.

SCOTT, C. J., and ANDERS, GORDON and REAVIS, JJ., concur.