UNITED STATES v. UNITED STATES BROKERAGE & TRADING CO.
et al.

(District Court, S. D. New York. December 24, 1919.)

1. CONSPIRACY ☞33—RIGHT OF UNITED STATES TO SELL ASTRAY FREIGHT IMMATERIAL.

In a prosecution for conspiracy to defraud the United States by retaining more than proper share of proceeds from selling astray railroad freight, it is immaterial whether the government had the right to sell the freight, since it was at least a bailee of the goods, and entitled to possession of the proceeds as against defendants.

2. EMBEZZLEMENT ☞10—RIGHT OF GOVERNMENT TO SELL ASTRAY RAILROAD FREIGHT IMMATERIAL.

In a prosecution for embezzling the proceeds of astray railroad freight, it is immaterial whether the government had the right to sell such freight, since it was at least a bailee of the goods, and entitled to possession of the proceeds as against defendants.

3. EMBEZZLEMENT ☞8, 9—LARCENY ☞8—OWNERSHIP OF VICTIM CANNOT BE QUESTIONED.

While embezzlement differs from larceny, in that it does not depend on a violation of possession, yet an accused, receiving possession from another as a fiduciary, will not be heard to question the ownership of the goods by his immediate victim.

4. EMBEZZLEMENT ☞11(1)—RIGHT TO DEDUCT PART AS COMMISSION DOES NOT PRECLUDE PROSECUTION.

The fact that accused had the right to deduct a portion of certain sums as a commission does not preclude a prosecution for embezzlement upon his converting the entire fund, or a greater portion thereof than he was entitled to, and it is immaterial whether accused had separated his commission before embezzling the balance.

5. EMBEZZLEMENT ☞16—BAILEE TO SELL ON COMMISSIONS WITHIN FEDERAL EMBEZZLEMENT STATUTE.

An auctioneer or bailee to sell on commissions is within the federal embezzlement statute.

6. CONSPIRACY ☞43(10)—INDICTMENT CHARGING VIOLATION OF DIRECTOR GENERAL'S ORDER BY "DELIVERY" OF GOODS SUFFICIENT.

An indictment that defendants conspired to violate an order of the Director General requiring railroads to sell certain unclaimed freight at public auction to the highest bidder, by delivering certain freight under a corrupt agreement and not at public auction, etc., is insufficient, since the word "delivery" need not import a final disposition, and is consistent with an agreement to sell at public auction and thereafter embezzle the proceeds.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Delivery.]

Criminal prosecution by the United States against the United States Brokerage & Trading Company and others. On demurrers to the indictments. Demurrers overruled to all counts of all indictments, except one count of one indictment, and sustained as to that count.

The case comes up upon demurrers to three indictments, which, as they concern dealings with three different railroads, are referred to as the Central Vermont, the Long Island, and the Jersey Central indictments.

The Central Vermont indictment is in seven counts against only the first three defendants, of which the first alleges that the Central Vermont Railroad was under the control of the Director General; that the United States had a property interest in certain freight in its possession, which it had become

"practically impossible to deliver to the consignees thereof," being known as "astray freight"; that the Director General, through his agents, delivered to the defendants "for sale on commission" quantities of "astray freight," which they caused to be sold under an agreement with the Director General, by which they were entitled to retain the expenses of cartage and delivery and 10 per cent. commission; that the balance of the money was the property of the United States; that the defendants conspired to defraud the United States of the money realized from the sale of such freight by making fraudulent returns of the money received by them from such sales, and by retaining a large part of the money received above their expenses and agreed commission. The second count alleges that the Director General delivered 72 bags of bark, which was astray freight, to the defendants, under the circumstances set forth in the first count, and that the defendants, out of the balance due from the sale of such bark, converted the sum of $83.85. This count was under the embezzlement section of the Criminal Code. The third, fourth, fifth, sixth, and seventh counts are similar to the second, laying separate instances of embezzlement.

The Long Island Railway indictment is against the first three defendants and contains seven counts. It is precisely similar to the Central Vermont indictment, except that it lays different instances of embezzlement in the six last counts.

The Central Railroad of New Jersey indictment is against all five defendants and contains nine counts. The first count alleges: That the Director General was in control of the Jersey Central Railroad, and came into possession of certain freight which it had become impossible to deliver to the consignees, and which was known as "astray freight." That the two last defendants were clerks in the freight claim agent's office of the road; that all five defendants conspired to defraud the United States as follows: The clerk, Lowrie, would deliver to the three first-named defendants astray freight, the three first-named defendants should sell such freight, and all five should unlawfully appropriate a large part of the moneys received, which were the property of the United States. That they should remit smaller sums, representing them as full payment for the sales of such freight, and that the two clerks should receive such sums as full payment. The second count alleges a conspiracy to embezzle money of the United States by the same acts as laid in the first count. The third count lays a conspiracy to commit an offense against the United States; that is, to violate the provisions of General Order 34a of the Director General. This order, so far as material, is as follows: "Carriers subject to federal control shall sell at public auction to the highest bidder without advertisement carload and less than carload nonperishable freight, which has been refused or is unclaimed at destination by consignees after the same has been on hand sixty days." The defendants agreed to violate this order by having the two clerks "deliver by a private, secret, and corrupt agreement and not at public auction and sale" to the other three defendants, freight of the kind described in the order. The fourth, fifth, sixth, seventh, eighth, and ninth counts are for embezzlement and are similar to the counts in the other indictments.

Benjamin P. De Witt, of New York City, for the United States.
Mooney, Fitts & Rowe, of New York City, for defendant Dumont.
Isaac Levy, of New York, for other defendants.

LEARNED HAND, District Judge (after stating the facts as above). [1] The counts for conspiracy to defraud the United States are clearly good from any aspect. It is no concern of the defendants whether or not the United States had the right to sell "astray freight." It was at the least a bailee of that freight, and, though the sale were wrongful, it was entitled to the possession of the proceeds. To appropriate those proceeds was either to impede the United States in its duty of discharging its liability to the consignees, if the sale was il-

legal (Haas v. Henkel, 216 U. S. 462, 479, 480, 30 Sup. Ct. 249, 54 L. Ed. 569, 17 Ann. Cas. 1112; U. S. v. Plyler, 222 U. S. 15, 32 Sup. Ct. 6, 56 L. Ed. 70), or, if the United States had the right to sell the goods then it was a direct misappropriation of funds of the United States, because upon that hypothesis the proceeds could be truly described as a part of the operating profits of the railway; i. e., as "railway operating income," under section 1 of the Federal Control Law (Comp. St. 1918, § 3115⅜a).

[2, 3] The embezzlement counts are also in my judgment good, and, if so, the count in the Jersey Central indictment for conspiracy to commit embezzlement as well. Two objections are raised to these: First, that it appeared that the property was not that of the United States; and, second, that the first three defendants could not commit embezzlement because they were part owners of the fund.

The first objection I answer as I have answered the objection to the "defrauding" counts. While embezzlement differs from larceny precisely in this, that it does not depend upon a violation of possession, nevertheless a person lawfully in possession may transfer that possession to another as a fiduciary, and the latter, having received possession in that way and betrayed the trust, will not be heard to question the ownership of the immediate victim. Rex v. Beacall, 1 Car. & P. 310, 454; Campbell v. State, 35 Ohio St. 70 (the statute reading, however, in that case "anything of value which shall come into his hands by virtue of his employment" [Act May 5, 1877 (74 Ohio Laws, p. 249) § 11]); Waterman v. State, 116 Ind. 51, 18 N. E. 63 (the prosecutor was a consignee); Meacham v. Florida, 45 Fla. 71, 33 South. 983, 110 Am. St. Rep. 61.

The second point depends upon the meaning to be attached to the word "embezzle," in the Criminal Code. As there was no such common-law crime, and as the statutes of embezzlement are various, a question arises as to just what elements enter into the crime. It has been very common to define embezzlement as the conversion of "the property of another," and under that definition many courts have excluded property owned in part by the defendant. McElroy v. People, 202 Ill. 473, 66 N. E. 1058; People v. Ehle, 273 Ill. 424, 112 N. E. 970; State v. Kent, 22 Minn. 41, 21 Am. Rep. 764; Van Etten v. State, 24 Neb. 734, 40 N. W. 289, 1 L. R. A. 669; Com. v. Libbey, 11 Metc. (Mass.) 64, 45 Am. Dec. 185 (semble); State v. Kusnick, 45 Ohio St. 535, 540, 541, 15 N. E. 481, 4 Am. St. Rep. 564.

In cases where the defendant has the right to retain as commission part of a sum of money courts have at times therefore been at some pains (Campbell v. State, 35 Ohio St. 70, 74), to inquire just where the title to the whole fund lay at the moment of conversion, and whether the defendant had any property interest in it at that time. Yet, on the whole it is the weight of the later authorities, and as I think much the better, that this inquiry is not necessary, but that the right to deduct a part of a sum of money due the prosecutor is irrelevant to the question whether the defendant has committed embezzlement in converting the whole. State v. Maines, 26 Wash. 160, 66 Pac. 431; Com. v. Fisher, 113 Ky. 491, 68 S. W. 855; Com. v. Jacobs, 126 Ky. 536, 104

S. W. 345, 13 L. R. A. (N. S.) 511, 15 Ann. Cas. 1226 (overruling Stone v. Com., 104 Ky. 220, 46 S. W. 721, 84 Am. St. Rep. 452, and re-establishing the original rule in Clark v. Com., 97 Ky. 76, 29 S. W. 973); People v. Civille, 44 Hun, 497; Territory v. Meyer, 3 Ariz. 199, 24 Pac. 183; Branderstein v. Way, 17 Wash. 293, 303, 49 Pac. 511; Wallis v. State, 54 Ark. 611, 620, 16 S. W. 821; People v. Hanaw, 107 Mich. 337, 341, 65 N. W. 231.

Com. v. Smith, 129 Mass. 104, 110, is probably not in point, and stands upon the fact that defendant was bound to turn over the whole sum without deduction. Apparently his pay was merely calculated by commission. Reg. v. Tite, 8 Cox, C. C. 458, probably must be understood in the same way. But in Hartley's Case, Ryan & R. 139, I understand the facts to be that the defendant was entitled to retain his commissions, and perhaps in Carr's Case, Ryan & R. 198, as well, though that is uncertain.

[4] The proper rule, where the defendant has an undivided interest in a chattel, which he converts, I need not consider until it arises. In the case at bar the defendants are alleged to have embezzled, not the chattels, but their proceeds, of which at most they were entitled to keep only a part. In such cases I think it is of no consequence whatever whether or not they had separated out their commission before they embezzled the balance. Having the right to retain so much as was their due of these absolutely interchangeable units, it appears to me absurd to say that they did not convert the balance. I am not sure that the allegations of the indictment do not meet the necessity, if there were one, of showing that the conversion was after separation of the fund; but I lay no stress whatever upon that. It is enough that the defendants converted a fund made up of equivalent units, a part of which they were not entitled to retain.

[5] Finally, the question arises whether a bailee to sell on commissions is within the statute. In Moore v. U. S., 160 U. S. 268, 275, 16 Sup. Ct. 294, 40 L. Ed. 422, the Supreme Court said that an indictment against an assistant postmaster, properly laid, would have been sufficient. He is scarcely a "clerk or servant." In the same case (160 U. S. 269, 272, 16 Sup. Ct. 294, 40 L. Ed. 422) the court said that it applied generally to all cases of persons intrusted with money by virtue of any fiduciary relation. I have no doubt that an auctioneer is within the statute. Therefore these counts are good.

[6] There remains only the third count of the Jersey Central indictment. I think this insufficient, regardless of the validity of Order 34a, or of the question whether it is a crime to violate it. If the count should be read as meaning that the clerks finally disposed of the chattels themselves by delivering them to the other defendants for their own, certainly it would lay a violation of the order, since the carrier would not then be selling them at public auction. All the other counts show that this was not the fact, but that the delivery was in compliance with the order and under an agreement by which the three first defendants were to sell the chattels and remit. Indeed, the very embezzlement presupposes that the order has been complied with, and not violated, since it implies a delivery to the defendants as fiduciaries.

The facts as they appear elsewhere in the indictment, therefore, contradict the only meaning which the allegations of this count can bear, which would state a violation of the order, because it is not such a violation to sell goods at public auction on behalf of the carrier, and to embezzle a part of the proceeds. The order goes no further than to lay down for the carrier one way as against all others of disposing of the chattels, which way was followed.

Strictly, of course, as the count cannot stand through aider, the demurrer may not either, and if the allegations are adequate, I ought not to read to their prejudice the other counts. Yet I own to an unwillingness, unless it be necessary to make a decision upon a putative situation which is obviously untrue, merely because there is no special demurrer for repugnance between the counts. Moreover, I think it may be quite honestly said that the count taken alone is insufficient, if I have correctly limited the scope of the order. The phrase, "deliver under a private, secret, and corrupt agreement, and not at private auction and sale," means nothing. "Delivery," standing alone, does not import a final disposition qua the carrier, and is consistent with an agreement to sell at public auction, though the delivery were not itself at public auction. The corrupt agreement may well have been to embezzle a part of the proceeds after an auction sale as fiduciary for the carrier. I hold, therefore, that the pleading is bad, if designed to lay the only facts which could constitute a violation of the order.

Therefore, in any aspect of the case, the question is altogether irrelevant whether the United States had the right to sell freight which remained unclaimed. It is irrelevant to the former counts, because the defendants are not in any position to question the title of the United States. It is irrelevant on this count, because the order was not violated. As the issue should under no circumstances be imported into any phase of the three indictments or of the trial, I decline to consider the questions of law discussed by the defendants touching it.

Demurrers overruled to all counts of all indictments, but the third count of the Jersey Central indictment. Demurrer to that count sustained.