# Wytheville.

## J. C. PAGE v. COMMONWEALTH.

### June 16, 1927.

1. LARCENY—*Embezzlement—Evidence Tending to Show Good Faith of Accused—Case at Bar.*—In the instant case, it was the theory of the prosecution that the accused collected $100.00 for a membership in his employer's detective agency and appropriated the money to his own use. Accused denied that he told his employer that he never received the check in question and undertook to explain his failure to turn over 60% of the amount collected to his employer by saying that the detective agency had failed to perform any service for many of the persons who had become members at his solicitation; that he had decided to quit his employer and open an agency of his own; that he had approached the member in question, suggesting that he cancel his application for membership in the agency of the employer and take a membership in the new agency. In this accused was confirmed by the member in question. Thus the question of the *bona fides* of the accused was in question as, if he was acting in good faith, he was not guilty of the larceny charged.

    *Held:* That the exclusion of evidence having a tendency to throw light on the question of the *bona fides* of the accused constituted error for which the judgment of conviction should be reversed.

2. LARCENY—*Embezzlement—Evidence Tending to Show Good Faith of Accused—Case at Bar.*—In the instant case, accused was charged with the larceny of a check which he had collected for a membership in his employer's detective agency. Accused claimed that he had started a new detective agency of his own and that the member in question had agreed to cancel his application for membership in the old detective agency and take out one in the new. Accused attempted to show that he had undertaken to render the services contracted for by the new concern to the member in question and to another member of the old concern who, under the same circumstances, had canceled his membership and taken a membership in the new concern, before the accusation of larceny, in order to show his good faith.

    *Held:* That this evidence was admissible to throw light upon the motive of accused.

3. LARCENY—*Embezzlement—Evidence Tending to Show Good Faith of Accused—Case at Bar.*—In the instant case, a prosecution for larceny of a check, accused contended that the check in question had been given him for a membership in his employer's detective agency and claimed that promises of services which had been made through accused by the detective agency had not been kept and that for that reason accused started an agency of his own and induced the member in question to cancel his application for membership in the old agency and to take one in the new.

   *Held:* That while the court properly excluded details as to the services promised by the old agency, it was competent to show that promises of service had been made through accused which had not been kept and that accused started an agency of his own.

4. EMBEZZLEMENT—*Fraudulent Intent.*—The most material element of embezzlement is the fraudulent intent of accused.

5. EMBEZZLEMENT—*Fraudulent Intent—Evidence.*—Since the crime of embezzlement depends upon the existence of a fraudulent intent in the mind of the person by whom the money or property is alleged to have been converted, a wide scope is given to the evidence which may be introduced by the State to show a fraudulent or criminal intent, or in behalf of the defence to show the absence thereof.

6. EMBEZZLEMENT—*Agency—Right of Agents to Commissions—Appropriation of Whole Fund.*—An agent or officer is not guilty of embezzlement in retaining a commission or fee which he is entitled to retain out of a fund in his hands. And it has been held by some courts that the right to deduct a commission or fee makes the officer or agent a joint owner with the principal in the gross sum in his hands, so that he is not guilty of embezzlement even though he converts the entire sum. But in Virginia such a right will not prevent a conviction where the agent appropriates the entire fund.

Error to a judgment of the Hustings Court of the city of Richmond.

*Reversed and remanded.*

The opinion states the case.

*Wendenburg & Haddon* and *Alfred J. Kirsh,* for the plaintiff in error.

*John R. Saunders, Attorney General, Leon M. Bazile*

and *Lewis H. Machen, Assistant Attorneys General,* for the Commonwealth.

CHICHESTER, J., delivered the opinion of the court.

J. C. Page was indicted at the April term of the Hustings Court of the city of Richmond for the larceny of $100.00, the property of George H. Bodeker, doing business under the name of Bodeker National Detective Agency. The indictment contained two counts, one charging larceny of money and the other of a certain check, dated Fredericksburg, Virginia, September 10, 1925, drawn by Goolrick's Modern Pharmacy, by William J. Lacy, to the order of Bodeker's National Detective Agency, for $100.00 on the Farmers and Merchants State Bank, Fredericksburg, Virginia.

The trial of the case in June 1926, resulted in a verdict of guilty of grand larceny with the punishment fixed at one year in the penitentiary. Upon this verdict the trial court entered judgment. From this judgment a writ of error and supersedeas were duly awarded by one of the judges of this court.

There are sixteen assignments of error. Nine of these relate to rejection by the court of certain evidence tendered by the accused. One, the tenth, relates to the action of the court in amending the verdict in court. One, the eleventh, related to the refusal of the court to set aside the verdict on motion of the accused, because, as alleged, it is contrary to the law and the evidence and for various other reasons. Five relate to the action of the court in giving and refusing certain instructions.

As we have concluded that the judgment will have to be reversed because of the improper exclusion of certain evidence proffered by the accused, and a new

trial awarded him, it will be unnecessary to consider assignment No. 10, relating to the amendment of the verdict, or the various grounds under assignment No. 11, relating to the motion to set the verdict aside, or the five assignments relating to instructions, with the exception hereafter noted, because upon a new trial neither the evidence nor the instructions will necessarily be the same.

The nine assignments relating to the refusal of the court to permit the introduction of certain evidence can generally be considered together because, for the most part, where there is error, there is the same fundamental vice.

A somewhat detailed statement of the uncontroverted facts and of the evidence on which the Commonwealth relies for conviction, of that on which the accused relies for acquittal and of the theories of the prosecution and of the defendant will be necessary as a preliminary to dealing with these assignments of error.

The accused was employed by the Bodeker National Detective Agency to solicit membership in the agency. The price of membership was $100.00 per year, and as long as the subscriber continued his membership he was entitled to certain services on the part of the agency without further charge. Of the membership fees solicited and collected by the accused under the contract of employment, the agency was entitled to sixty per cent and the accused forty per cent.

In the course of his employment, on September 10, 1924, accused solicited and obtained from the Goolrick Modern Pharmacy of Fredericksburg, Virginia, an application for membership in the Bodeker Agency, and a check, described in the indictment, for $100.00. It had been his custom, with the consent or at least acquiescence of his employer, to endorse checks for the

agency with his own name following, to deposit them to his credit and later pay by his own check sixty per cent of the amounts collected to his employer and retain forty per cent for himself.   He did not remit sixty per cent of the Goolrick Modern Pharmacy check at all, and left the employ of the Bodeker Agency early in November.

Mr. Bodeker, the owner of the Bodeker Agency, who lived in Washington and was only in Richmond occasionally, learned something about the Lacy membership and check for $100.00 from an employee in the Richmond office and wrote Mr. Lacy about it.   In reply to this letter Mr. Lacy sent him the cancelled check bearing the endorsement "Bodeker National Detective Agency, J. C. Page."

The membership stub turned over to his employer at the time he left the Detective Agency was marked cancelled in accused's handwriting.

Mr. F. J. Bodeker upon this point testified:

"Q. Did you have any conversation with Mr. Page with reference to that particular receipt?

"A. I did.

"Q. State it.

"A. This cancelled receipt was turned in along with two or three other receipts the latter part of October and when I came to Richmond to see Mr. Page I had a hard time to get him to the office; called him up two or three times and sent him word.

"Q. Was he still in your employ then?

"A. Yes, sir, and had our paraphernalia.   When he came down there I asked him why all these cancelled receipts; it looked funny to me, three or four or five turned in at the same time.

"Q. Did you call his attention to that particular cancelled receipt?

"A. Yes, sir.   That was in November.

"Q. This is the application and receipt?

"A. Yes, sir.

Note:   Filed as Exhibit F. J. B. No. 2.

"Q. It bears across it the word "Cancelled?"

"A. Yes, sir.

"Q. In whose handwriting is that "Cancelled?"

"A. Mr. Page's.

"Q. Did you call Mr. Page's attention to the cancellation of this particular application?

"A. Yes, sir, and he told me he received no money on it at all, that after he wrote it up the man backed out and wouldn't give him the money.

"Q. Have you received any money on that check?

"A. We never have."

It will thus be seen that the theory of the prosecution was that the accused collected $100.00 from W. J. Lacy for the Bodeker National Detective Agency and appropriated it to his own use.

The accused denied that he had told his employer he had never received the check from Mr. Lacy, and undertook to explain his failure to turn over sixty per cent of the Lacy collection to his employer by saying that the detective agency had failed to perform any service for many of the persons who had become members at his solicitation; that he had complained repeatedly to his employer about this and that finally, after he had solicited Lacy, taken his money and his application for membership, he had decided to quit his employer and open an agency of his own.   With this end in view he states that he went to a number of persons who had applied for membership in the Bodeker Agency through him and had paid their membership fees, and told them of his intention.   He suggested to them that he would cancel their applications if it met with their approval,

return the amounts paid him for the Bodeker Agency, and if they desired they could take membership in his agency and that he would see that they got the service they paid for.     Some of the parties thus solicited agreed to this, among them Mr. Lacy, proprietor of Goolrick's Modern Pharmacy.   Mr. Lacy corroborates the accused as to the cancellation of the original application and his application for membership in the new agency.

The prosecution contends, of course, that the accused was not acting in good faith and that his conduct in the matter, the cancellation of the original application and the pretense as to establishment of an agency of his own, were subterfuges to enable him to appropriate the funds of his employer to his own use.

The accused, on the other hand, claims that he acted in the utmost good faith.   In reference to the Lacy check he testified:

"Q. Tell about the cancellation of Mr. Lacy's contract.

"A. When I wrote up Mr. Lacy I wrote him up in his sun parlor; he was in bed.   After coming back to Richmond, when I first came back Mr. Garth wasn't in the office of Mr. Bodeker.   I kept the check in my pocket and received numerous complaints and made up my mind not to turn it in.   I went back to Fredericksburg and told Mr. Lacy that for reasons I would cancel his contract and return him his money or take him in with a company I contemplated forming.   He said he just as soon be with me.   I called on the Dodge Motor Car Company and told them the same thing, but they preferred to go with Bodeker and I put them with Bodeker."

It will thus be seen that the controversy in this prosecution is over the question of the *bona fides* of the accused.   If he was not acting in good faith he is

guilty of the larceny charged. On the other hand, if he was acting in good faith, however unethical his conduct was, he was not guilty of larceny.

[1] It was, for the most part, the action of the court in excluding evidence which had a tendency to throw light on the question of the *bona fides* of the accused which is complained of, and which, we think, constituted error for which the judgment should be reversed.

[2] It will only be necessary to illustrate what we have in mind by reference to one or two assignments of this character, for example: With reference to the 4th assignment of error, when Mr. Wm. J. Lacy was testifying he was asked the question, "Now, after you went into the new concern, took your membership in the new concern, is it not a fact that Mr. Page wrote you and offered his services then to find out when he should come up there?" The question and answer were excluded. Counsel stated that he expected to prove that the accused undertook to render the service contracted for by the new concern of which he claimed to be the head and that the object was to show the *bona fides* of Page. We think under the circumstances of this particular case, if the offer of service was made before he was accused of the larceny, the evidence was admissible to throw light upon the motive, and that its weight was a question for the jury.

The question asked A. P. Higgins (5th assignment), "Who has been giving you service?" Higgins was one of four applicants that had applied for membership in the Bodeker Company and had later, according to Page's statement, cancelled the application with that company and had agreed to transfer membership to Page's agency. The question and answer were excluded. Counsel for accused stated to the court that he expected to show that since the alleged transfer of

membership the new agency had been giving Higgins service. The evidence was improperly excluded, we think, for the reason as heretofore stated, that the evidence tended to throw some light on the *bona fides* of the accused.

[3] The 6th assignment of error involves evidence of the same general character. It related to evidence the object of which was to show in detail what service the accused had promised prospective members on behalf of the Bodeker Agency, and while the court properly excluded details as to the service promised, it was competent to show that promises of service had been made through accused which had not been kept, and that accused started an agency of his own. The tendency of such evidence was to show good faith of accused and he was entitled to any weight the jury might attach to it.

What has been said as to the 5th assignment of error applies to the 6th and 8th assignments.

[4, 5] The prosecution was, in its essence, for embezzlement. The most material element of such an offense is the fraudulent intent of the accused; was his intent *mala fide* or *bona fide?* In *State* v. *Moyer*, 58 W. Va. 151, 52 S. E. 33, 6 Ann. Cas. 344, this is said: "Since the crime of embezzlement depends upon the existence of a fraudulent intent in the mind of the person by whom the money or property is alleged to have been converted, a wide scope is given to the evidence which may be introduced by the State to show a fraudulent or criminal intent, or in behalf of the defense to show the absence thereof." Quoting from 10 Am. & Eng. Encyc. (2nd ed.), page 1032e: "Since from its nature intent is incapable of direct proof, great latitude is necessarily allowed in proving this element of the offense. Broadly speaking, any evi-

dence is admissible which has a tendency, even the slightest, to establish fraudulent intent on the one hand, or on the other to show the *bona fides* of the accused." 15 Cyc. 529.

Assignments 1, 2, 7 and 9 are without merit. So far as the 7th assignment is concerned the court was right in limiting the evidence to the bulk of the collections made by Page during his employment. The object of this testimony was to show that Bodeker was biased against the accused because he had left his employ and would take a large amount of business from the agency and that Bodeker's testimony was colored by bias because of this. It was not necessary or proper to go into the details of such collections. As far as the court's remark is concerned, "I don't think it amounts to anything," speaking of the evidence referred to, as the case will be reversed for reasons assigned, it is not necessary to consider this phase of the assignment.

Assignment 10 relates to the amendment of the verdict of the court, and assignment 11 relates to the motion to set aside the verdict. Obviously it is not necessary to consider the 10th at all or to consider the 11th further than to say that the verdict will be set aside and the judgment reversed for reasons heretofore given.

The remaining assignments relate to the instructions. Except in a general way, it is only necessary to consider one of them asked for by the accused, as follows: "The court instructs the jury that if you believe from the evidence the accused had a forty per cent interest in the check in question, while the Bodeker's National Detective Agency's interest was sixty per cent, then this constituted them partners and you must find the accused not guilty."

[6] Numerous cases are cited from other jurisdic-

tions which seem to hold under some embezzlement statutes that where one has an interest in a fund by way of commissions he is not properly indictable for an alleged embezzlement and fraudulent conversion of the same or any part thereof. Such a case is *State* v. *Kent*, 22 Minn. 41, 21 Am. Rep. 764. See also *McElroy* v. *People*, 202 Ill. 474, 66 N. E. 1058. There are numerous other cases cited in the petition but they not only are against the weight of authority but they base their conclusions, we think, on some distinction between larceny at common law and embezzlemen statutes. The correct rule, and the one followed by the trial court in this case, is laid down in Brill's Cyc. Cr. Law, Vol. 1, section 516 (pages 864–866): "An agent or officer is not guilty of embezzlement in retaining a commission or fee which he is entitled to retain out of a fund in his hands. And some courts hold that his right to deduct a commission or fee makes him a joint owner with the principal in the gross sum in his hands, so that he is not guilty of embezzlement even though he converts the entire sum. But according to the weight of authority such a right will not prevent a conviction where the agent appropriates the entire fund, at least unless he follows collecting on commission as a business. * * *"

It will be noted that the authorities cited by the accused under this assignment of error are cited in note 57 of the above quoted work on criminal law. This note shows that the rule laid down in *State* v. *Kent*, 22 Minn. 41, 21 Am. Rep. 764 (1875), has been since that time changed by statute in Minnesota. Opposed to the authorities cited in the petition are the authorities from the Federal and appellate courts of thirteen States, all of which are cited in note 58 on page 866 of Volume 1, Brill's Cyc. Cr. Law.

See *Commonwealth* v. *Jacobs*, 126 Ky. 536, 539, 104 S. W. 345, 13 L. R. A. (N. S.) 511, 15 Ann. Cas. 1226 (1907); *Wallis* v. *State*, 54 Ark. 611, 620, 16 S. W. 821 (1891); *People* v. *Hanaw*, 107 Mich. 337, 341, 65 N. W. 231 (1895); *United States* v. *United States Brokerage and Trading Co., et al.* (D. C.), 262 Fed. 459, 462; *Morse* v. *Commonwealth*, 129 Ky. 294, 313, 111 S. W. 714; *State* v. *Lanyon*, 83 Conn. 449, 76 A. 1095.

It follows that the instruction tendered by the accused was properly refused.

It cannot now be foreseen what instructions will be proper upon a new trial of the case except to say that they should present the case to the jury upon the theory of the Commonwealth, which is based upon alleged *mala fides* of the accused and upon the theory of the defense, which is based upon his *bona fides.*

For the error in rejecting the evidence indicated, the judgment of the trial court will be set aside and reversed and the accused will be awarded a new trial to be had in conformity with the views herein expressed.

*Reversed and remanded.*