[No. 2073. Decided June 9, 1896.]

THE STATE OF WASHINGTON, *Respondent*, v. JOHN COVERT, *Appellant*.

EMBEZZLEMENT — EMPLOYER AND EMPLOYEE IN RELATION OF DEBTOR AND CREDITOR.

One who is employed as the driver of a laundry wagon under a contract which charges him instead of the patrons with all the work brought in and permits the driver to make the collections, retaining for himself 22 per cent. of the amount due for laundry work brought in, and making him personally responsible for failure to collect moneys from patrons whom he had trusted, stands in the relation of a debtor, and upon failure to turn in moneys collected, cannot be prosecuted for embezzlement as an agent for hire.

Appeal from Superior Court, Pierce County.—Hon. EMMETT N. PARKER, Judge. Reversed.

*F. W. Cushman, E. E. Cushman* and *Charles E. Claypool*, for appellant.

*B. W. Coiner*, Prosecuting Attorney, for The State.

The opinion of the court was delivered by

GORDON, J.—The appellant was tried and convicted, in the superior court for Pierce county, on an information which charged him with the crime of larceny by embezzlement. From such conviction he has appealed.

The information upon which the trial occurred is as follows, omitting formal part:

"He, the said John Covert, on the 1st day of July, A. D. 1895, at the County of Pierce, State of Washington, and thence continuously to the 7th day of September, A. D. 1895, being there, during all of said period of time the agent and employee with hire of one Henry A. Durr, was by said Henry A. Durr during all of said time entrusted, as such agent and employee, with the receipt and collection of moneys due and owing to said Henry A. Durr from Rae McRoberts, William Dwars, Edna Earle and Mrs. Broomell (given name unknown) and divers other persons, to the Prosecuting Attorney aforesaid unknown; and on many and divers days during said period of time, the exact dates being to said Prosecuting Attorney unknown, he, the said John Covert did there, as such agent and employee, receive, collect and take from the said Rae McRoberts, William Dwars, Edna Earle & Mrs. Broomell (given name unknown) and divers other persons, to the said Prosecuting Attorney unknown, divers and sundry sums of money, the several and aggregate amounts of which are to the said Prosecuting Attorney unknown, and on or about the 7th day of September, A. D. 1895, at said Pierce County, State of Washington, and within one year next preceding the filing of this information, of said moneys so entrusted to him, and so receive and taken into his possession, he, the said John Covert, did then and there unlawfully, fraudulently and feloniously convert to his own use, and failed to account for to the said Henry A. Durr the sum of two hundred & nine and 25-100 dollars ($209.25) of the moneys and personal property of said Henry A. Durr."

Many questions are raised and exhaustively argued in the elaborate brief of counsel for appellant, but inasmuch as we have concluded that the case must be reversed and the appellant discharged from custody because of the insufficiency of the evidence, we have deemed it advisable not to discuss in this opinion any other phase of the case. To do so would be unnecessary, and the importance of some of the questions

raised constrains us to withhold any opinion upon them until a case shall arise wherein their determination may become necessary.

It appears from the evidence that the complaining witness, Henry A. Durr, had been for a number of years prior to the time of the trial the proprietor of the Cascade Steam Laundry, located in the city of Tacoma; that some time in the fall of 1894, being in ill health, he had leased the same for a number of months to one Yeger, resuming possession in May, 1895. Upon the trial he testified as follows:

"I know the defendant John Covert. He had been working for Yeger and I employed him when I took the laundry back from Yeger. I employed him to work as a driver and collector. The first contract I had with him was that he was to receive $8 per week and 8 per cent. of the amount of the laundry work he brought in. . . . A short time after I took the laundry back from Yeger I found I was not making enough out of it to pay my help the same wages they had always got before; so I called a meeting on the evening of May 28, 1895, of all of those who worked for the laundry — some 18 or 20 — and stated to them I would either have to cut their wages or would have to commence conducting the laundry on another basis, in which the amount they got should depend upon the amount of work done by the laundry. At this meeting the matter was discussed and the following agreement made between myself and all the help that worked at the laundry. I was to act as general manager of the laundry. I was to be allowed a salary of $18 per week. The others were to be allowed the same per day or per hour that they were then receiving, provided that at the end of the week each one of us took one-half of the amount due each of us under this arrangement in cash. . . . Under this new agreement the drivers were all to receive 22 per per cent. of the amount of the laundry work brought in by them. They were permitted to retain their 22

per cent. out of the moneys in their hands as soon as the same came into their hands, and to turn in the balance to myself or the bookkeeper. . . . The laundry brought in by each driver was charged to him."

He further testified that he had told the drivers, including the appellant, that if they trusted any one and failed to turn in the money he would hold them personally responsible for the laundry so charged to them, and "they could turn in cash as many times or as few each week as they pleased." It further appears from the testimony of the complaining witness and the bookkeeper that the cash turned in was not credited to the patrons of the laundry; that no account was kept between the laundry and its patrons, but an account was kept between the laundry and the drivers and on this account the drivers were charged with the bundles brought in by them (according to a fixed schedule of prices), and were credited with 22 per cent. of the amount of the goods they handled, *and also with such amounts in cash as they from time to time paid.* It appeared from the books in evidence that, at the date of June 1, 1895, the balance due the laundry from appellant was $84.75; June 30, 1895, the balance was $111.35; August 9, 1895, the balance was $172.12, and on August 31, 1895, the balance due from appellant to the laundry, as shown by the books, was $320.10.

The complaining witness further testified as follows:

"He [appellant] was to have 22 per cent. of the amount of the work he brought in. He was entitled and I permitted him *to keep this percentage out of any of the moneys he collected as soon as the same came into his hands.* . . . I had several conversations with Covert the last week in August and the first in September, and asked him why he did not turn in some

more money. He said a good many of the people at whose homes he had delivered clothes were camping outside of the city and he had not been able to collect the money," and that he " *had some of the money in his pocket then but he was going to buy a suit of clothes whether the laundry got any thing or not.*"

We think enough has been set out to show that the relation existing between the parties was that of debtor and creditor and not of principal and agent; and while the information charges the appellant as agent with the receipt and collection of moneys due and owing to said Durr from certain other persons (named in the information) and " divers other persons to the prosecuting attorney unknown," (all of said persons being, as the evidence shows, patrons of the laundry), the proof wholly fails to sustain such charge. As already noticed, no charge was ever made upon the books of the laundry or anywhere else against its patrons, nor was the character of the account between the laundry and the appellant such as to show from whom the moneys, which he from time to time paid on account, were collected. The books at all times showed the amount due from appellant to the laundry, but not that any sums were due from any of its customers to it. Whether appellant succeeded in collecting the sums owing by patrons for laundry work, or wholly failed to make such collections, was a matter of indifference to the complaining witness, according to the contract between them, and, as already noticed, the work done was charged not to the patrons but to appellant, and he was held responsible for the amounts so charged, whether collected by him or not. While the evidence shows that he is indebted to the laundry, we think it does not sustain the allegations of the information, and the statute against embezzlement cannot be held to embrace a case like the present. The

complaining witness may seek his remedy in a civil action, but the criminal courts cannot be used as a medium for the collection of debts.

The judgment of conviction will be reversed and the cause remanded with directions to discharge the appellant.

HOYT, C. J., and SCOTT, DUNBAR and ANDERS, JJ., concur.