·(No. 11202.—Reversed and remanded.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* HENRY ALBERT DETTMERING, Plaintiff in Error.

*Opinion filed April 19, 1917—Rehearing denied June 7, 1917.*

1. CRIMINAL LAW—*ownership of property must be alleged with same accuracy in embezzlement as in larceny.* Unless the rule is modified by statute the ownership of property must be alleged with the same accuracy in embezzlement as in larceny.

2. SAME—*indictment for embezzlement, under section 75 of the Criminal Code, must allege taking of money "without the consent of his company or his employer."* Section 75 of the Criminal Code, relating to embezzlement, was framed to cover co-partnerships regardless of the business in which said co-partnerships might be engaged, and an indictment for embezzlement under said section must charge that the defendant took the money "without the consent of his company or his employer."

3. SAME—*what must be alleged and proved where embezzlement of partnership property is charged.* An indictment for embezzling partnership property must allege the ownership to be in the firm and set out the names of the partners, and the names of the partners must be proved as alleged, as a partnership is not a legal entity apart from the individual members; but if the defendant is a member of the firm the indictment must show that he had no interest in the property.

4. SAME—*section 76 of Criminal Code does not make a partnership a legal entity.* Section 76 of the Criminal Code, regarding the embezzlement of property of banks or banking companies, does not make a partnership a legal entity, separate and apart from its membership.

5. SAME—*a fiduciary relation between defendant and owner of property must be shown in indictment for embezzlement.* An indictment for embezzlement must show a fiduciary relation between the defendant and the owner of the property, but it is sufficient, under section 75 of the Criminal Code, if the facts set forth in the indictment show that the defendant was a trustee òr agent of the owner of the property.

6. SAME—*one cannot be convicted of embezzling property in which he has an interest.* To constitute the crime of embezzlement the fraudulent conversion must be of property belonging exclusively to a person other than the one charged, as a party cannot be convicted of embezzling property in which he has an interest.

7. SAME—*mere proof of receipt of funds and failure to account therefor does not, in itself, prove embezzlement.* Mere proof of the receipt of funds and a failure to account therefor does not, in itself, show embezzlement by an agent or servant but there must be further evidence of the conversion.

8. SAME—*fact that a bank lost money while defendant was in charge does not show embezzlement.* The mere fact that a bank lost money and that the defendant was in charge of the bank at the time it lost the money will not justify his conviction on a charge of embezzlement unless the evidence shows that he was responsible for the loss by converting the money to his own use.

WRIT OF ERROR to the Circuit Court of Randolph county; the Hon. J. F. GILLHAM, Judge, presiding.

A. C. BOLLINGER, and J. FRED GILSTER, for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, A. D. RIESS, State's Attorney, and A. R. ROY, (A. G. GORDON, and A. E. CRISLER, of counsel,) for the People.

Mr. JUSTICE CARTER delivered the opinion of the court:

Plaintiff in error was indicted, tried and found guilty in the circuit court of Randolph county on the charge of embezzling $500, alleged in one count of the indictment to be the property of the Farmers Bank of Steeleville, in said county, and in the second count as the property of William Ebers. This writ of error was thereafter sued out.

Plaintiff in error was about twenty-five years of age at the time of the trial. He had been employed as cashier of the Farmers Bank, located at Steeleville, in Randolph county, since 1910. In 1902 some fifty persons formed a co-partnership to do a banking business, designating it as the Steeleville Bank. In 1904 the name was changed to the Farmers Bank. Later a branch bank was established by this co-partnership at Cutler, a town about five miles from Steeleville, the two banks being run under one management. At the time of the establishment of this branch bank three

new partners were taken into the partnership. The list of partners changed from time to time, and the business was continued under the management of plaintiff in error until January, 1916, when a receiver was appointed to take charge of the affairs of the bank. In December, 1915, two bankers from Chester, Illinois, at the request of certain parties interested in the bank, and in which request plaintiff in error seems to have joined, went to Steeleville and examined the books of the bank. They found an apparent discrepancy in the books of about $26,000, indicating that this money had been lost in the management of the bank, but neither of them was able to say what was the cause,—whether it was bad loans, depreciation or defalcation of officers of the bank in charge of its funds. Later, we assume after the receiver was appointed, an expert accountant was employed to examine the books. His testimony was that they were in very bad shape, and that some eighteen pages of the general ledger,—apparently one of the most important books kept by the bank,—had been cut out with a knife or scissors, leaving but a narrow strip of each leaf next to the binding. He found an apparent shortage of over $25,000, which in his judgment, based on what he found in the books, was not the result of bad loans, unfortunate investments or extraordinary expenses of the bank or bad securities of any kind. He testified that in his judgment this discrepancy or shortage could not be explained from the books and could only be explained by the executive officer of the bank or the man who knew all about its transactions. The testimony of these experts tended to show that the bank books indicated that the business of the bank was in fairly prosperous condition until along in 1913. It was apparent from the evidence of the experts that the books were kept in a very careless and unsatisfactory manner and that the mistakes had been made in keeping them.

The facts concerning the $500 item which is the basis of the charge in the indictment upon which conviction was had

are substantially as follows: William Ebers, one of the stockholders, borrowed on February 5, 1915, $985 from the Farmers Bank and gave a note, payable one year after date, for that amount, signed by himself and a surety. August 24, 1915, he drew a check for $500 on the First State Bank of Chester, payable to the Farmers Bank, and sent it with a letter, by one Neimeier, a director of the bank, to the Farmers Bank to have it applied as a payment on said note. Neimeier testified that he gave this check in person to plaintiff in error. A sister of plaintiff in error, Elsie Dettmering, who had been acting as assistant cashier of the Farmers Bank for about five years, testified that at the time the check came in the bank was short of cash, and that plaintiff in error took the check to Chester and cashed it and the next day brought back the $500 in currency and handed it to her, and she put it with the rest of the bank's cash in the vault, where it remained until paid out in the regular course of business of the bank. The evidence shows that plaintiff in error's wife was at that time at her father's home in Chester; that a baby had been born to her about two weeks before the transactions with reference to this check, and plaintiff in error frequently, during the time she was sick at her father's house, went there in an automobile in the evening to spend the night and returned in the auto to his business the next morning. Miss Dettmering also testified that she entered the cash from this check in the cash book and note register. Plaintiff in error's father, in whose building the bank was located, also testified that he saw plaintiff in error hand this money to his sister in the morning after he returned from Chester. No book of account was produced showing any entry of this $500 cash, and the note showed that there had been no indorsement of the payment thereon. The sister failed to find this entry in any of the books, but claimed that the books in which she entered it were not in court and were not shown her.

The receiver, Ebers, testified that he received all the books of the bank from its vault on January 7, 1916, and put his initial and a number on each book; that he put these books in a wooden box, nailed it up and tied a rope around it; that he filled another box (of paste-board) with bank papers, and sent both boxes by express to Chester, and the books and all the papers arrived there in the same condition that they were shipped in, and that he had kept them in his office in Chester till the time of the trial and had them in court at that time. He also testified that there had been no changes in the books and he knew nothing about the cutting out of the leaves of the ledger. Testimony was offered on the part of plaintiff in error to indicate that these boxes of books were not very carefully looked after during the time they were shipped from Steeleville to Chester, and it is argued that the evidence indicates that there was an opportunity, during this shipment, to steal some of the papers or books or disfigure them. The testimony of the express agent at Steeleville was to the effect that the books and papers were considered of no great value, as at the time they were shipped it was agreed no value should be put on them, and therefore they did not look after them with the same care as they otherwise would. However, there is no evidence in the record tending to show that anyone actually did interfere with, steal or mutilate the books or papers during the time they were being shipped.

Counsel for plaintiff in error contend that there was a variance between the allegations in the indictment and the proof as to the ownership of the property. Both counts charged that the Farmers Bank was a co-partnership composed of certain partners and stockholders, (naming them,) some thirty-one in number. Mrs. Zula Bollinger and W. T. White were named as two of the co-partners and stockholders. The proof, in our judgment, shows conclusively that Mrs. Bollinger was not a co-partner until November 26, 1915, while the date of the offense charged in the indict-

ment was October 2, 1915. The proof also showed, without contradiction, that W. T. White died May 4, 1915, and had therefore been dead several months on said October 2, 1915, and that his stock was owned by his widow and only child. Unless the rule is modified by statute, the ownership of property must be alleged with the same accuracy in embezzlement as in larceny. 2 Bishop's New Crim. Proc. sec. 320. See to the same effect, *People* v. *Brander,* 244 Ill. 26; *People* v. *Stricker,* 258 id. 618, and cases therein cited.

Counsel for the State claim that as the indictment was founded on section 76 of the Criminal Code instead of on section 75, as claimed by plaintiff in error, it was not necessary to prove, under section 76, the names of the stockholders; that it was sufficient to simply show that the money was the property of the bank, without reference to who were the stockholders in the bank. It is somewhat difficult to decide from a reading of the indictment whether it was drawn under section 75 or section 76. We are disposed to think, taking both counts together, that it must be held that it was based on section 75, as that is the section which refers especially to embezzlement of partnership property, and both counts distinctly set forth that the bank was a co-partnership, giving the names of the co-partners. It seems clear that the one who drafted the indictment would not have alleged it was a partnership and set out in detail the names of the co-partners and stockholders if he had been drafting the indictment under section 76.

Counsel for the State seem to concede that if the indictment is based on section 75 it was necessary for the State to prove the names of the stockholders, but they further insist that this question was not raised at the time the evidence was offered; that it was first raised at the close of the People's case, and cannot, therefore, be urged in this court,—citing *Cross* v. *People,* 47 Ill. 152, *Clay* v. *People,* 86 id. 147, and *Greene* v. *People,* 182 id. 278. These authorities do not so hold. In *Greene* v. *People, supra,* the court says

(p. 283) : "Nothing is better settled than that the objection of variance, to be available upon appeal or writ of error, either in a civil or criminal action, must be urged in the court below, and for the reason that if it is pointed out and insisted upon it may be avoided by amendment or other proofs." The other two cases cited by counsel for the State lay down the same rule, but they are not applicable to the facts as they appear in this record.

At the close of the People's case in the trial court, counsel for plaintiff in error moved ·the court to instruct the jury to acquit the defendant on three grounds, the first being, "variance between allegation and proof of ownership of property embezzled." Clearly, on the record, this point was urged in the trial court, and under the authorities cited and relied on by counsel for plaintiff in error the question of variance can be raised in this court. The instruction asked to direct the jury to acquit the defendant was, however, properly refused, as was held by this court in *People* v. *Zurek,* 277 Ill. 621.

The counts, being based on section 75 of the Criminal Code, are faulty in not charging that plaintiff in error took the said money "without the consent of his company or his employer." This section was framed to cover co-partnerships, regardless of the business in which said co-partnerships might be engaged. Where the ownership of property is shown as in an unincorporated business firm it must be so alleged in the indictment. (*Wallace* v. *People,* 63 Ill. 451; *Staaden* v. *People,* 82 id. 432.) This being so, it is necessary to prove the names of the partners. Neither of the counts negatived the presumption of joint ownership which arises from the allegation that the property belonged to a partnership, of which the evidence shows that plaintiff in error was a member. The indictment was therefore faulty in that regard. The law in this country is that a partnership is not a person as distinguished from the members composing the firm in whom the right of property exists.

(*People* v. *Stricker, supra; Meadowcroft* v. *People,* 163 Ill. 56.) The reasons for this are set out at length and the authorities stated in the case last cited.

Counsel for the State in their brief take the position that section 76 makes a partnership a legal entity, separate and apart from its membership. We think this position is squarely against the reasoning in *Meadowcroft* v. *People, supra,* where the court said on this question (p. 73) : "Whatever may be the law of other States such is not the law of this State."

Counsel for plaintiff in error further insist that the indictment was faulty, and that he could not be convicted and the verdict cannot stand because the indictment failed to charge and the proof to show that a fiduciary relation existed between the plaintiff in error and the owner of the property. The authorities hold that it is necessary to show a fiduciary relation between the defendant and the owner of the property. (7 Ency. of Pl. & Pr. 418, and cases cited.) "The defendant's fiduciary character, which is the distinguishing feature between embezzlement and larceny, must be specially averred." (See *Kibs* v. *People,* 81 Ill. 599,) and the long list of cases cited in support of this doctrine. While the allegations in the indictment on this question are not satisfactory, we do not think the case should be reversed for the error in this regard, as under the authorities there need be no direct averment, in express words, that the plaintiff in error was "a bailee, trustee or agent, where facts are set forth showing that he was such." (7 Ency. of Pl. & Pr. 418.) We think the facts set forth in the indictment were such as to show that he was a trustee or agent of the copartners.

This court has held that under the statute of embezzlement, in order to constitute that crime, the fraudulent conversion must be of property belonging exclusively to a person other than the one charged. (*McElroy* v. *People,* 202 Ill. 473.) If the money in question was, in fact, in part

the property of plaintiff in error this conviction cannot be sustained. Counsel for the State rely on *State* v. *Kusnick,* 45 Ohio St. 535, among other cases, as holding otherwise. That case was referred to in *McElroy* v. *People, supra,* and the court declined to follow the reasoning, saying our statute was different. We held also in that case that other decisions were to the same effect as the *Kusnick case,* but that the decisions in other States announcing a different doctrine were founded on statutes unlike ours. Counsel for the State contend that we distinguished the *McElroy case* as to the construction here given to that case and held to the contrary in *People* v. *O'Farrell,* 247 Ill. 44. In this we think counsel are in error. The court in this last case sanctioned the doctrine laid down in *McElroy* v. *People, supra,* but sustained the conviction in the *O'Farrell case* because the evidence showed that O'Farrell had been proven guilty of embezzlement or fraudulently converting to his own use money in which he had no interest. We think, under the reasoning of the decisions of this court, there can be no escape from the conclusion that the conviction cannot be sustained, because under the allegations of the indictment and the proof offered it must be held that the property which plaintiff in error is charged with embezzling was property in which he had an interest. To hold otherwise would be to overrule the repeated decisions of this court.

Counsel for the plaintiff in error further argue that the court erred in giving instruction No. 4 for the People, which reads:

"The court instructs the jury, as a matter of law, that the law presumes that a person intends all the natural and usual consequences of his acts, and that when a cashier of a bank, as such cashier, takes into his possession the money of the bank of which he is cashier, or the money of any person deposited therein, and withholds the same and fails to account for the same, such withholding and failure to account is *prima facie* evidence of the fraudulent conver-

sion to his own use, which constitutes embezzlement under the statute."

We do not think this instruction states the law. Mere proof of the receipt of funds and failure to account therefor does not, in itself, show embezzlement by an agent or servant. There must be further evidence of the conversion. (*People* v. *Davis*, 269 Ill. 256.) We find no evidence in the record that proves, with the degree of certainty required in such a case as this, that the plaintiff in error fraudulently converted to his own use the $500 referred to in both counts of the indictment. There is no evidence to show that he used any part of this $500 for himself or that he improperly disposed of it in any way. There is no evidence tending to show that plaintiff in error lived extravagantly, or speculated, or made deals involving any sum beyond his means. This instruction plainly authorized the jury to convict plaintiff in error simply on evidence that showed that the $500 in question had come into the possession of the bank and had not been accounted for by plaintiff in error. Under the most favorable consideration of the evidence in this record in support of the verdict herein, it can only be concluded that under the management of plaintiff in error the bank in question lost considerable sums of money; that the $500 cash obtained by plaintiff in error from a check sent by Ebers to the bank was taken out of the vault of the bank without any account being made of it and without any bookkeeper's memorandum to show where it went. Counsel for the State concede this, and, as a reason justifying the conviction of plaintiff in error on such a record, state in their brief, "no attempt has been made by the defendant or his attorneys to explain or account for this shortage or any part of it," and claim that the proof shows that the bank lost money,—how it lost it is not shown,—but as plaintiff in error was in charge and did not explain how it was lost he should be held guilty and the judgment sustained. Should this position be upheld, then we are, in effect, over-

ruling the statute that has been in force in this State ever since it was organized,—that the accused cannot be compelled to give evidence against himself, and the fact that he does not testify cannot be used against him in any way. (Crim. Code, sec. 6, p. 948.) The evidence in the record justifying conviction in this class of cases, as well as all other criminal cases, must be sufficient to satisfy the jury, beyond a reasonable doubt, that the accused is guilty, under the evidence, of the crime charged in the indictment. The mere fact that it was shown that the bank lost money and that plaintiff in error was in charge of the bank at the time it lost the money will not justify his conviction on the charge of embezzlement unless the evidence shows that he himself was responsible for this loss of money by converting it to his own use. There is no evidence, direct or circumstantial, in the record showing that he converted any money to his own use. This being so, the instruction in question is wrong. The mere fact that other instructions, as claimed by counsel for the State, laid down the correct rule on this question will not cure this error. With two instructions before them stating the law in a different way the jury would not know which instruction to follow, and might easily have been misled as to the law authorizing the conviction. *People* v. *Novick,* 265 Ill. 436, and cited cases.

What we have already stated sufficiently answers the argument of the State that under repeated decisions of this court a conviction will not be reversed for technical errors where the record shows that substantial justice has been done, and that the errors, if any, could not have affected the result of the trial as the record in this case tends to show that substantial justice has been done. It is impossible to find from this record whether the $500 realized from said check was converted to his own use by plaintiff in error, and without such proof the judgment of the trial court can not be sustained. The experts who examined the books could not tell, and if they could not, with all their experience

and the books before them, ascertain that fact, how can a jury or a court on their evidence be justified in holding plaintiff in error guilty?

The judgment of the circuit court is reversed and the cause remanded.

*Reversed and remanded.*