[No. 26630. *En Banc.* October 25, 1937.]

THE STATE OF WASHINGTON, *Respondent*, v. R. E. MAHAFFAY, *Appellant*.[1]

*Henderson, Carnahan & Thompson,* for appellant.

*Harry H. Johnston* and *John W. Fishburne,* for respondent.

MILLARD, J.—Defendant was charged by information as follows, with the crime of grand larceny by embezzlement:

"That the said R. E. Mahaffay in the county of Pierce, in the state of Washington, on or about the 16th day of November, 1935, did then and there being unlawfully and feloniously having in his possession, custody and control, as officer and trustee of the Universal Investment Company, a corporation, personal property of the value of $17,308.13, lawful money of the United States of America, and while having said property in his possession, custody and control as trustee and

[1]Reported in 72 P. (2d) 1028.

officer of the said Universal Investment Company, a corporation, and he then and there being an officer of said corporation, did then and there being unlawfully and feloniously secrete, withhold and appropriate the said property to his own use, with the intent then and there to deprive and defraud the lawful owner thereof, to-wit: Universal Investment Company, a corporation, contrary to the form of the statute in such cases made and provided, . . ."

From the judgment and sentence pronounced against him on the verdict of guilty, the defendant appeals.

Our disposition of the assignment that the trial court erred in its refusal to take the case away from the jury upon the ground that the state failed to prove the crime charged, obviates necessity of consideration of the other assignments of error.

The information was filed under Rem. Rev. Stat., § 2601 [P. C. § 8944], which defines the crime of grand larceny by embezzlement. The subdivision of that section pertinent to this appeal reads as follows:

"Every person who, with intent to deprive or defraud the owner thereof— . . .

"(3) Having any property in his possession, custody or control, as bailee, factor, pledgee, servant, attorney, agent, employee, trustee, executor, administrator, guardian or officer of any person, estate, association or corporation or as a public officer, or a person authorized by agreement or by competent authority to take or hold such possession, custody or control, or as a finder thereof, shall secrete, withhold or appropriate the same to his own use or to the use of any person other than the true owner or person entitled thereto; . . .

"Steals such property and shall be guilty of larceny."

It will be noted that the information charges that the appellant, having in his custody and control, as an officer of the Universal Investment Company, a corporation, money in excess of seventeen thousand dollars, withheld and appropriated the money *to his*

*own use.* The section of the statute quoted above also makes it a crime for an officer of a corporation to permit the assets of the corporation to be appropriated *to the use of any person* other than the true owner or person entitled to the property.

Under the above quoted section of the statute, the crime of grand larceny by embezzlement may be committed in two alternative ways: First, by the *conversion* by a corporate officer of trust funds *to his own use;* or, second, by an act of such corporate officer in permitting corporate funds to be *converted to the use of any* person other than the true owner. The information only charged the first alternative.

Counsel for appellant insists there is no evidence that any funds of the Universal Investment Company were converted to the use of the appellant, which was the crime charged in the information. It is urged that the information, as drawn, makes the issue much more narrow than it would have been if the appellant had committed the crime in two alternative ways as defined by the statute. It is argued, however, that there is no evidence that funds of the Universal Investment Company were converted to the use of any person other than the true owner.

Under the information, the burden was imposed upon the state to show that the money of the investment company was withheld and appropriated by the appellant to his own use; that is, the only question presented is whether there was evidence introduced that funds of the Universal Investment Company were converted to the use of the appellant. In other words, the appellant was charged with the personal embezzlement of the Universal Investment Company's money to his own use. Whether the appellant converted funds of the investment company to the use of any other person, is not an issue.

That the state did not sustain the burden of proof that appellant withheld and appropriated to his own use funds of the Universal Investment Company, is clear from a reading of the evidence, which is summarized as follows:

The Universal Investment Company, a corporation, was organized in 1928. Eighteen years prior thereto, a corporation known as R. E. Mahaffay & Company was organized. The Mahaffay Company was engaged in a general investment and insurance business. Since 1915, the appellant, who is the manager of that company, has owned only one share of stock in that corporation. We do not glean much information from the record concerning operations of the two corporations. From the date of its incorporation in 1928, a substantial portion of the money received from the sale of stock in the Universal Invesment Company was turned over to Mahaffay & Company, a corporation, for investment. It is patent that the Mahaffay company is not the *alter ego* of the appellant, who, since 1915, has owned only one share of stock in the company.

The business of the Universal Investment Company was handled by the Mahaffay Company. An accountant for the state department of licenses, and a witness for the state, testified, respecting the account of the investment company with the Mahaffay Company, that commencing in 1928, the amount of money passing between the two companies increased from year to year; more money passed to the Mahaffay Company than passed back to the investment company; that, with the exception of one or two years in which there was a decrease, the balance charged against the Mahaffay Company on the books of the investment company increased until near the close of 1934, when it exceeded seventeen thousand dollars.

The information in the case at bar was filed April 10,

1936; hence, it did not cover any transactions prior to April 10, 1933. Evidence of transactions prior to April 10, 1933, could not be admitted as proof of commission of the crime, but was offered merely as a preliminary fact.

The state accountant segregated the transactions between the two corporations subsequent to April, 1933. While the gross amount of the transactions exceeded twenty thousand dollars, the difference during the period April, 1933, to April, 1936, between the amounts paid to the Mahaffay Company and the amounts paid by that company to the investment company approximated twenty-four hundred dollars. This witness testified that his investigation did not disclose a single false entry made by the appellant.

In 1935, Morton Gregory became interested in the affairs of the investment company and succeeded to the presidency of the investment company. He testified that, in examining the financial statement of the investment company, he discovered a balance of seventeen thousand dollars due to the investment company from the Mahaffay Company. He suggested that the Mahaffay Company give a note to the investment company for that amount.

Pursuant to that suggestion, a note was given in the amount mentioned in the information, which note was signed by the appellant as the president of the Mahaffay Company.

There is no evidence that the Mahaffay Company, which invested and reinvested the funds of the investment company, violated any specific directions of the investment company respecting the investment and reinvestment of its funds; nor is there any showing that any of the money was converted to the use of the appellant or to the use of the Mahaffay Company. Whether the balance due from the Mahaffay Company

to the investment company was the result of investment losses, does not appear. During the period within the statute of limitations, twenty thousand dollars in funds were handled by the Mahaffay Company, the itemized transactions of which were set forth in an exhibit introduced by the state; and during this period of the statute of limitations, only an approximate amount of twenty-four hundred dollars represents an increased balance.

All that is disclosed by the record before us is that, subsequent to April 10, 1933, the R. E. Mahaffay Company received from the investment company twenty-four hundred dollars in excess of the amount which the Mahaffay Company returned to the investment company. This does not constitute proof that the appellant, as an individual, committed grand larceny by embezzlement of funds of the investment company. The record does not disclose that Mahaffay had any beneficial interest other than that of an employee in the Mahaffay Company. That corporation was not shown to be appellant's *alter ego*.

We repeat, there is no proof of conversion of any property of the Universal Investment Company to the use of the appellant or to the use of the Mahaffay Company. Nothing more is shown than that, by reason of a series of monthly changing debits and credits arising out of business transactions between the two corporations—the nature of which is not explained—a balance accrued in favor of the investment company and against the Mahaffay Company.

The mere proof of the receipt of funds and failure to account for those funds does not, in itself, show embezzlement by an agent or servant. The mere fact that it was shown that the Universal Investment Company lost money and that appellant was in charge of the Mahaffay Company, which handled the invest-

ments and reinvestments of the investment company at the time the investment company lost the money by reason of poor investment, or otherwise, will not justify the conviction of appellant on the charge of embezzlement of the balance due from the Mahaffay Company to the investment company unless there is evidence—we find none—showing that appellant was responsible for the loss of this money by converting it to his own use. It is the fact of conversion of the money to his own use which would render him guilty of the crime of grand larceny by embezzlement.

In *People v. Dettmering,* 278 Ill. 580, 116 N. E. 205, the manager of a bank was charged with embezzlement of five hundred dollars. In that case, as in the case at bar, the only proof introduced was the evidence that there was a failure to account for the money in question. The trial court instructed the jury that, when the cashier of a bank in his official capacity received money, his failure to account for it was *prima facie* evidence of fraudulent conversion to his own use. On appeal, the instruction was held erroneous. The following language of that opinion is applicable in the case at bar:

"Mere proof of the receipt of funds and failure to account therefor does not, in itself, show embezzlement by an agent or servant. There must be further evidence of the conversion. (*People v. Davis,* 269 Ill. 256.) We find no evidence in the record that proves, with the degree of certainty required in such a case as this, that the plaintiff in error fraudulently converted to his own use the $500 referred to in both counts of the indictment. There is no evidence to show that he used any part of this $500 for himself or that he improperly disposed of it in any way. There is no evidence tending to show that plaintiff in error lived extravagantly, or speculated, or made deals involving any sum beyond his means. This instruction plainly authorized the jury to convict plaintiff in error simply

on evidence that showed that the $500 in question had come into the possession of the bank and had not been accounted for by plaintiff in error. Under the most favorable consideration of the evidence in this record in support of the verdict herein, it can only be concluded that under the management of plaintiff in error the bank in question lost considerable sums of money; that the $500 cash obtained by plaintiff in error from a check sent by Ebers to the bank was taken out of the vault of the bank without any account being made of it and without any bookkeeper's memorandum to show where it went. Counsel for the State concede this, and, as a reason justifying the conviction of plaintiff in error on such a record, state in their brief, 'no attempt has been made by the defendant or his attorneys to explain or account for this shortage or any part of it,' and claim that the proof shows that the bank lost money,—how it lost it is not shown,—but as plaintiff in error was in charge and did not explain how it was lost he should be held guilty and the judgment sustained. Should this position be upheld, then we are, in effect, overruling the statute that has been in force in this State ever since it was organized,—that the accused cannot be compelled to give evidence against himself, and the fact that he does not testify cannot be used against him in any way. (Crim. Code, sec. 6, p. 948.) The evidence in the record justifying conviction in this class of cases, as well as all other criminal cases, must be sufficient to satisfy the jury, beyond a reasonable doubt, that the accused is guilty, under the evidence, of the crime charged in the indictment. The mere fact that it was shown that the bank lost money and that plaintiff in error was in charge of the bank at the time it lost the money will not justify his conviction on the charge of embezzlement unless the evidence shows that he himself was responsible for this loss of money by converting it to his own use. There is no evidence, direct or circumstantial, in the record showing that he converted any money to his own use."

Another apt authority is *Hamilton v. State,* 46 Neb. 284, 64 N. W. 965, in which it was held that, where the

relation of debtor and creditor exists between a principal and his agent, the fact that, in balancing the account, the agent is found to be indebted to his principal is not alone sufficient to sustain a verdict finding the agent guilty of embezzlement or conversion to his own use of the property of his principal. The court said:

"It is not enough, to sustain such a conviction that the relation of debtor and creditor existed between them, and that on a balance being struck of the account that the agent would be found indebted to his principal. In this case Hamilton had charge of the funds of the corporation. He had a right to check them out for property purchased for the corporation, and for the expenses of conducting its business and paying its debts. Among these debts were the ones to himself for his salary, for grain sold the corporation, and for the elevator sold; and the mere fact that he overdrew his account did not of itself, without more, make him an embezzler."

In the case at bar, there was the relation of debtor and creditor existing between the two corporations. The mere fact that the Mahaffay Company may owe a balance of twenty-four hundred dollars or seventeen thousand dollars, or any amount, is not proof of conversion by the appellant of such money *to his own use*. If we regarded, as the state insists we should, the appellant and the Mahaffay Company as one and the same, the record before us, at least presumably, shows a legitimate transaction, and there is no evidence of a conversion inconsistent with the terms of the bailment. That being so, the conviction cannot be sustained. 2 Wharton's Crim. Law (12th ed.), § 1308.

The judgment is reversed, and the cause remanded with direction that the trial court dismiss the action.

Steinert, C. J., Holcomb, Geraghty, and Simpson, JJ., concur.

BLAKE, J. (dissenting)—From the evidence, the jury was justified in finding that the following facts were proven beyond a reasonable doubt: That, in 1910, there was organized a corporation known as "Gunston-Heath Insurance Company;" that the name of the corporation was changed in 1912 to "Gunston-Mahaffay Company;" that, in 1913, the name was again changed to "R. E. Mahaffay & Company;" that, subsequent to that time, the defendant, R. E. Mahaffay, was the president, manager, and guiding spirit of the corporation. Regardless of how the stock was distributed from time to time, the affairs of the company were under Mahaffay's sole management and control. The secretary of the company (who had been such for fifteen years) testified:

"Q. Was anything done in the R. E. Mahaffay Company without R. E. Mahaffay's knowledge, consent or approval? A. No, sir. Q. He had complete charge? A. Yes, sir. Q. When you kept the books of the R. E. Mahaffay Company and the Universal Investment Company, under whose control and influence were you? A. R. E. Mahaffay."

Subsequent to 1932, the company was insolvent. While it was not dissolved or put into receivership, it thereafter had no active existence. It was a corporation only in name. Of the character of its existence, the secretary testified:

"Q. Is the R. E. Mahaffay Company a going concern at the present time? A. Not at the present time. Q. So determined from the books of the state department? A. I can't say as to that. Q. How long since it has been a going concern? A. Since November, 1932. . . . Q. It went into trusteeship in 1932 and has not been a going concern since, and is not now? A. No, sir."

In 1928, Mahaffay and others organized the Universal Investment Company. The organizers took the

common stock, and sold the preferred stock to the public. The two companies at all times had their offices in the same suite. Very soon, if not at the beginning, Mahaffay became the manager of Universal. He shortly became president, and full control of the company's affairs fell into his hands. From the beginning, the funds of Universal were turned over to R. E. Mahaffay & Company, ostensibly "for investment." An account was set up on the books of each of the companies so as to give the appearance of mutual debits and credits. Sometimes the formality was indulged of depositing money to the bank account of Universal and then transferring it to R. E. Mahaffay & Company. Frequently the formality was dispensed with, and funds belonging to Universal found their way directly into the account of R. E. Mahaffay & Company. This went on until November 16, 1935, when, according to the book accounts, there was due from R. E. Mahaffay & Company to Universal the sum of $17,308.13. The defendant, as president, executed a note in that amount on behalf of R. E. Mahaffay & Company to Universal.

At no time was any authority given by Universal for this method of handling its funds. The jury was fully warranted in finding that the book accounts showing mutual debits and credits were simply designed to veil the real character of the transactions; that "R. E. Mahaffay & Company" was, for all real intent and purpose, R. E. Mahaffay; that "R. E. Mahaffay & Company" was a mere conduit through which the funds of Universal Investment Company were sluiced into the pockets of R. E. Mahaffay, the individual.

In *State v. Davies,* 176 Wash. 100, 28 P. (2d) 322, this court said:

"One may not, by a corporate form of organization, or by utilizing a corporate entity, succeed in the attempt to evade a legal obligation or escape punishment for breach of a criminal statute."

Believing the evidence brings this case under that rule, I dissent.

BEALS, MAIN, and ROBINSON, JJ., concur with BLAKE, J.