[No. 27242. *En Banc.* January 5, 1939.]

THE STATE OF WASHINGTON, *Respondent,* v. WILLIAM
POLZIN, *Appellant.*[1]

*Trumbull, Severyns & Trumbull* and *John F. Wal-thew,* for appellant.

*Joseph H. Johnston* and *John M. Wilson,* for respondent.

STEINERT, C. J.—Defendant was charged, by information, with the crime of grand larceny. Tried before a jury, he was convicted of petit larceny and was fined one thousand dollars. From the judgment of conviction and sentence, he has appealed.

[1]Reported in 85 P. (2d) 1057.

The principal question on the appeal is whether the acts upon which the charge was based constitute a crime.

The material facts, said to support the verdict and judgment, are as follows: Appellant was secretary-treasurer, managing officer, and owner of more than one-third of the capital stock, of Surety Finance Corporation, which was located in Port Angeles and was engaged in the business of lending money in moderate amounts. Appellant was also president of, and a large stockholder in, Clallam Adjustment Corporation, located in the same city and engaged in the business of collecting commercial accounts; appellant's wife was secretary and managing officer of the collection company.

The capital stock of Clallam Adjustment Corporation was owned and held exclusively by appellant and members of his family and relatives; the capital stock of Surety Finance Corporation had a wider diversity of ownership. The two corporations had their offices in the same building, although on different floors, and, to all intents and purposes, the business of each was conducted as a family affair.

Mamie E. Braseth, the complaining witness in the case, was employed as a telephone operator in Port Angeles. Upon a number of occasions, over a period of about three years, she had borrowed money from Surety Finance Corporation upon her personal notes, which, latterly, had been secured by the pledge of a diamond ring. In November, 1937, she owed the finance corporation a balance of ninety dollars upon her last note. She was also indebted, in varying amounts, to a number of creditors who were pressing her for payment.

Desirous of obtaining a sum of money from which she could make partial payments to her various credit-

ors and also realize a small amount of cash for herself, Mrs. Braseth called on appellant at the office of the finance corporation on November 24, 1937. After some discussion, it was agreed between her and appellant that the finance corporation would lend her two hundred dollars upon her note, payable in semi-monthly installments and secured by a pledge of the ring. It was further agreed that the proceeds of the loan should be applied, first, to the payment of the ninety dollars then owing to the finance corporation; second, to the payment of the expense of the immediate loan and interest on the note; third, to a cash payment of seven dollars to the borrower; and the balance to partial payments, but without discount, upon her indebtedness to five of her creditors, according to a schedule outlined by Mrs. Braseth. At the suggestion of appellant, it was agreed that it would be advisable that he, rather than she, should attend to the distribution of the money. The note was thereupon executed, and seven dollars in cash was immediately paid to Mrs. Braseth. An amount sufficient to pay the ninety dollars owing upon her former note and to satisfy the expense incident to the present loan was reserved by the finance corporation.

Partial payments were made upon three of the accounts in the manner directed by Mrs. Braseth. The other two accounts, totalling $57.50, were handled in a manner contrary to her directions. Instead of paying those accounts directly, in full or in part, to the creditors, appellant, on November 24, 1938, and immediately following his transaction with Mrs. Braseth, executed and delivered to Clallam Adjustment Corporation the check of Surety Finance Corporation in the sum of fifty-seven dollars. The check showed upon its face, however, that it was for the two particular accounts against Mrs. Braseth.

Shortly thereafter, appellant called on the two creditors whose accounts were covered by the check and solicited the collection of their accounts against Mrs. Braseth. He did not tell them that he then had the money to pay those accounts, nor did he advise them of Mrs. Braseth's direction that only partial payments were to be made and that there was to be no discount taken thereon. As a result of his solicitation, appellant obtained the two accounts for collection by Clallam Adjustment Corporation on the basis of a fee of one-third of the amount collected. Nothing, however, was paid to either of the two creditors prior to January 8, 1938.

On or about that date Mrs. Braseth learned from the two creditors that nothing had been paid them. At the same time, she was also advised by them of their arrangement with appellant for the collection of the accounts on a fee basis. She thereupon made complaint to appellant regarding nonpayment, but made no specific complaint regarding the proposed collection charge. Appellant assured her that his former arrangement with her had been carried out as agreed, and that all her bills had been paid. On the same day, but after Mrs. Braseth had made complaint to him, appellant delivered to the two creditors checks of the Clallam Adjustment Corporation in the full amounts of their respective accounts, less the one-third collection fees. The checks were received and acknowledged by the two creditors as in full payment of their accounts against Mrs. Braseth, and no further demand has ever been made upon her by either of them. The collection charges retained by the Clallam Adjustment Corporation amounted to nineteen dollars.

Upon these facts, the jury found appellant guilty of petit larceny. From the judgment on the verdict, this appeal was taken.

The information is based on Rem. Rev. Stat., § 2601 [P. C. § 8944], which provides:

"Every person who, with intent to deprive or defraud the owner thereof— . . .

"(3) Having any property in his possession, custody or control, as bailee, factor, pledgee, servant, attorney, agent, employee, trustee, executor, administrator, guardian or officer of any person, estate, association or corporation or as a public officer, or a person authorized by agreement or by competent authority to take or hold such possession, custody or control, or as a finder thereof, shall secrete, withhold or appropriate the same to his own use or to the use of any person other than the true owner or person entitled thereto; . . .

"Steals such property and shall be guilty of larceny."

The theory of the prosecution is that appellant was the trustee of Mrs. Braseth and that, in paying the sum of fifty-seven dollars over to Clallam Adjustment Corporation instead of paying it to her creditors as directed, he was guilty of a misappropriation. Had the jury adopted that theory in its entirety, it would have been compelled, under the instructions of the court, to find appellant guilty of grand larceny, because the amount paid to Clallam Adjustment Corporation was in excess of twenty-five dollars. But, since, by the verdict, appellant was found guilty of petit larceny only, it is apparent that the jury found that the amount misappropriated was only nineteen dollars, which was the amount of the commission retained by Clallam Adjustment Corporation. The jury must, therefore, have determined from the evidence that the mere payment of the fifty-seven dollars to Clallam Adjustment Corporation was not of itself a misappropriation of that amount with intent to defraud, but that the misappropriation consisted of the retention of nineteen dollars and its application to collection charges. The theory of the defense, contrary to that of the state, and at

variance with the verdict of the jury, is that the transaction between Mrs. Braseth and appellant, acting as the executive officer and agent of Surety Finance Corporation, established a relation of debtor and creditor and not one of trusteeship.

For the present, we confine ourselves to the respective conflicting theories of the state and of appellant.

It is apparent from the record that, in the transaction between Mrs. Braseth and appellant, no point was made, nor was any consideration taken, of the distinction between appellant, acting in his individual capacity, and Surety Finance Corporation, represented by and acting through appellant as its agent. Throughout the testimony, they are referred to, by both parties, as though they were one and the same person. It may be that Mrs. Braseth regarded the transaction as one between herself and appellant individually, and that appellant regarded it, rather, as one between the corporation and a client, which, in law, we think it was. But, upon that, we lay no emphasis, for, in either event, our conclusion is the same.

Whoever the person was, whether individual or corporate, with whom Mrs. Braseth had the transaction, she entered into an agreement with that person. The agreement, or contract, comprised two elements: (1) the advancement of a loan and (2) the application of the proceeds thereof. From beginning to end, however, it was one contract, part of which was performed and part of which, at the worst, was not performed. Except for the seven dollars, about which there is no dispute, no part of the proceeds of the two-hundred-dollar loan was ever delivered to Mrs. Braseth. She never came into possession of, nor ever got title to, any part of the balance of $193. That amount remained with, and formed a part of the funds of, Surety Finance Corpora-

tion, and the title thereto was in the finance corporation until it paid out the money.

When the finance corporation drew and delivered its check for fifty-seven dollars to the collection company, it transferred that amount from its own general funds, not from any specific fund which had in any way been earmarked or set aside as belonging to Mrs. Braseth.

It is argued by the state that the transaction evidenced by the note was equivalent to a payment of two hundred dollars by the finance corporation direct to Mrs. Braseth and an immediate redelivery of $193 by her to it. In a sense, that is true. But we are not dealing with equivalents. We are dealing with actual facts which are alleged to constitute a criminal offense. What Mrs. Braseth did, in law, by the transaction was to establish a credit with Surety Finance Corporation to the extent of $193, with the understanding and agreement that a like amount was, in due course, to be paid by the finance corporation to certain of her creditors.

Upon the execution and delivery by Mrs. Braseth of her note, the finance corporation became indebted to her, but it was not a custodian of money belonging to her. Assuming that the lender failed to make the payments as agreed, that amounted simply to a breach of part of the contract, subjecting the lender to liability in a civil action. Had Mrs. Braseth demanded that the proceeds of the note be paid directly to her, under an agreement to that effect, and had appellant then failed to make such payment, he would not thereby have been guilty of larceny; he would simply have rendered himself or the finance corporation liable upon a civil suit for breach of contract. Any judgment recovered would have been a personal one, but not a lien upon any specific fund. When, on the other hand, the proceeds were not applied as the agreement provided, it was

likewise a breach of one element of the contract, for which only a civil action would lie.

█ Counsel have cited only one case closely germane to the point involved: *State v. White,* 46 Idaho 124, 266 Pac. 415. An independent search has revealed but one additional case, and that is from a court of inferior jurisdiction: *Commonwealth v. Mitchneck,* 130 Pa. Super. Ct. 433, 198 Atl. 463.

In the *White* case, the information charged, in one count, that the defendant had agreed to obtain a loan of four thousand dollars for a client upon the latter's note and mortgage which were to be assigned by the defendant to some person who would be willing to make the loan; that the proceeds of the loan were to be held by the defendant until the client had completed the construction of a certain building; that the note and mortgage were executed by the client and assigned by the defendant; that defendant obtained the four thousand dollars; and that he subsequently failed to pay over the balance of two thousand dollars, as agreed, to the client. The second count was for the same offense, but charged that defendant had agreed to make the loan from his own funds, upon conditions similar to those in the first count. In reversing a judgment of conviction, the court held that the demurrer to the second count should have been sustained on the ground of insufficiency of facts pleaded. The court recognized that the conviction might have rested on the first count, but held that, inasmuch as the jury could also have found the facts as alleged in the second count, which was insufficient, a new trial should be granted. Touching the second count, the court said:

"Under the facts pleaded it is certain that no money, the property of the Sahlbergs [the client], actually came into the possession of the defendant either from them or from a third person. No sum of $2,000 was set aside for the Sahlbergs; no specific fund from which the

$2,000 should be paid was agreed upon or impressed with a trust for its payment; no right of the Sahlbergs to have their claim paid from any particular sum was asserted. If the payment of the balance of the purchase price had been immediately payable, it could not be said the Sahlbergs could have successfully claimed a title to or ownership in any particular fund. They had acquired a title to no fund or property. Their civil remedies would have been limited to the recovery of a personal judgment against White and in such action it would not have been decreed that the contracts and facts here pleaded entitled them to payment from a specific sum. Defendant's agreement that he would hold the balance in trust for them did not pass the title to any property to them or lessen his ownership in any particular fund."

The *Mitchneck* case, 130 Pa. Super. Ct. 433, 198 Atl. 463, *supra,* follows the same reasoning and attains a similar result.

The language just quoted from the *White* case is expressive of the principle applicable to the facts of this case as already outlined. The relation created by the contract was that of debtor and creditor. We have uniformly held that the failure of the debtor to account to his creditor does not constitute embezzlement. *State v. Covert,* 14 Wash. 652, 45 Pac. 304; *State v. Carr,* 169 Wash. 56, 13 P. (2d) 497 (citing *State v. White,* 46 Idaho 124, 266 Pac. 415, *supra*); *State v. Mahaffay,* 192 Wash. 76, 72 P. (2d) 1028. Although the lender had agreed to apply the proceeds of the loan to the payment of certain debts, such payment was to be made from the lender's own funds, not from a specific fund belonging to the borrower.

There is another reason, equally forceful and compelling, why appellant cannot be held criminally liable under the admitted facts. This ground meets and refutes the verdict of the jury, which fixed appellant's guilt upon the retention of nineteen dollars col-

lection charges. As already noted, the two accounts were paid in full, and Mrs. Braseth was thereupon released from further liability thereon. She lost nothing, by the transaction between appellant and the two creditors. They might complain, but she cannot, for, although the collection company obtained nineteen dollars for its collection fees, that amount came from money which otherwise would have gone to, and been retained by, the two creditors, and for which Mrs. Braseth received the full benefit. Her credit has not been harmed by anything that appellant has done, for the two creditors were fully informed of the true situation before this prosecution was brought.

Appellant's conduct is not to be approved, and may even be condemned, but that is a matter of business ethics, not one of criminal liability. Appellant did not steal money belonging to Mrs. Braseth; he simply charged the creditors, and was paid, fees which, had they known the true facts, they would not have agreed to pay. They, however, are making no complaint, and the information is not drawn upon the theory that any money was stolen from them.

The judgment is reversed, and the charge is dismissed.

BEALS, MILLARD, GERAGHTY, ROBINSON, and SIMPSON, JJ., concur.

BLAKE, J. (dissenting)—While the defendant was charged in one count with the crime of grand larceny, "as trustee and agent," it would seem to me that, if the facts stated in the majority opinion are examined in the light of the *alter ego* rule, as applied in *State v. Davies*, 176 Wash. 100, 28 P. (2d) 322, it is apparent that defendant was guilty of petit larceny in two respects. As agent and trustee, he had in his hands $57.50 of money belonging to Mamie Braseth. He held it, charged with the trust of paying it—all of it— to

two of her creditors. Instead of carrying out the trust, he went to the two creditors, and, by false pretenses—concealment of the fact that he held sufficient money to pay the claims in full—induced them to enter into contracts whereby he obtained one-third of the amount he held in trust for them. To my mind, these facts constitute petit larceny under the statute and within the purview of the information.

I dissent.

MAIN and HOLCOMB, JJ., concur with BLAKE, J.